IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| GLENN HORTON,<br><br>      Plaintiff,<br>v.<br><br>AT&T SERVICES, INC.,<br><br>      Defendant. | C/A. No. 3:18-cv-3504-CMC-SVH<br><br>**Opinion and Order**<br>**(ECF Nos. 17, 18)** |

Through this action, Plaintiff Glenn Horton ("Horton") seeks recovery from AT&T Services, Inc. ("AT&T Services" or "Defendant") for employment-related claims. Specifically, Horton asserts one state-law and two federal claims relating to denial of a promotion he sought between September and November 2017. The matter is before the court on AT&T Services' motion for summary judgment (ECF No. 17) and Horton's motion for leave to file an amended complaint out of time ("motion to amend") (ECF No. 18). For reasons set forth below, the motion for summary judgment is granted and the motion to amend is denied.

**BACKGROUND**

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings and a Report and Recommendation ("Report"). On January 6, 2020, the Magistrate Judge issued a Report recommending Defendant's motion for summary judgment be granted as to all claims and Horton's motion to amend be denied. ECF No. 25.

The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Horton filed

objections on January 20, 2020. ECF No. 27. Defendants filed a response on February 3, 2020. ECF No. 28. The motions are now ripe for resolution.

After conducting a *de novo* review as to specific objections made, and considering the record, the applicable law, and the Report of the Magistrate Judge, the court adopts the recommendations in the Report, grants summary judgment on all claims, and denies the motion to amend. While the court adopts the recommendations in the Report, it declines to adopt one portion of the rationale. *See infra* Discussion § I.E.

**STANDARDS**

**Review of Report.** The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

**Summary Judgment.** Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the district court must "view the evidence in the light most favorable to the nonmoving party." *Jacobs v. N.C. Admin. Office of the*

*Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014) (per curiam)). "Summary Judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Id.* Therefore, the court cannot weigh the evidence or make credibility determinations. *Id.* at 569. The district court may not "credit[] the evidence of the party seeking summary judgment and fail[] properly to acknowledge key evidence offered by the party opposing that motion." *Id.* at 570. However, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

**Amendment of Complaint.** Leave to amend should be freely granted under Fed. R. Civ. P. 15(a), and amendment is generally allowed absent futility, undue prejudice, or bad faith. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). However, pursuant to Fed. R. Civ. P. 16, when a party seeks to amend after the deadline for such requests set by scheduling order, the party must show good cause to modify the scheduling order deadlines in addition to satisfying the Rule 15(a) standard for amendment. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (reconciling Rule 15's liberal standard with Rule 16's scheduling order requirements).

## DISCUSSION

I. **Motion for Summary Judgment**

    A. **Recommendations**

The Report recommended AT&T Services' motion for summary judgment be granted as to the federal claims on two grounds. First, it recommended the motion be granted because it is

undisputed AT&T Services was neither Horton's employer nor involved in the promotion decision at issue and Horton failed to proffer evidence to support a joint-employer theory of liability. ECF No. 25 at 9-13. Second, the Report recommended the motion be granted because Horton "failed to establish a prima facie case of discrimination." *Id.* at 13-18. The Report recommended the motion be granted as to the state law claim in light of Horton's concession that claim was time barred. Thus, the Report recommended summary judgment be granted on all claims.

### B. Objections

In his introduction, Horton states he "objects to each of the findings and legal conclusions stated in the Report[.]" ECF No. 27 at 1. Despite this broad statement, Horton advances only two specific objections. First, he asserts the Magistrate Judge improperly "place[d] herself in the factfinding role" in determining AT&T Services did not act as a joint employer. *Id.* at 1, 2. Second, Horton asserts he has proffered evidence sufficient to establish a prima facie case of age discrimination. *Id.* at 2-5.

### C. State-Law Claim

As noted above, Horton does not object to the recommendation summary judgment be granted on his state-law claim, a claim he conceded was time barred in his response to the motion for summary judgment. The court, therefore, adopts the recommendation summary judgment be granted as to this claim.

### B. Federal Claims-Joint Employer Theory

The recommendation summary judgment be granted on both federal claims rests, in part, on Horton's concession BellSouth Telecommunications, LLC, rather than AT&T Services, was his employer and an absence of evidence AT&T Services was involved in the particular employment decision at issue. Horton's specific objections do not challenge either premise, both

4

of which are well supported. The court, therefore, adopts the recommendations it find AT&T Services was neither Horton's actual employer or involved in the employment decision at issue.

Horton's specific objections challenge only the recommendation as to joint-employer liability. As to this issue, Horton asserts "[i]t is particularly difficult to understand how the Magistrate [Judge] could conclude as a matter of law AT&T was not an employer of Plaintiff when he and virtually all of his co-employees, and every person deposed in the case, all believe they were employees of AT&T." ECF No. 27 at 2. Horton does not cite any supporting evidence or offer any further argument on this issue.

While Horton offers no greater detail in his objections, his memorandum in opposition to summary judgment stated as follows:

> During every deposition, Plaintiff's co-workers and managers all asserted that they had AT&T email addresses, AT&T security badges, and held themselves out as AT&T employees. [citing Horton and one other witness's depositions]
>
> In fact, the manager who interviewed Plaintiff for the position at issue in this case appeared at his deposition in an AT&T work shirt. . . Furthermore, Defendant produced all of Plaintiff's employee records from his employment including, but not limited to resume, applications for employment, employee appraisals, attendance records and wage records. Plaintiff also called AT&T's hotline to report his complaints of discrimination . . . Furthermore, all of Plaintiff's employee appraisals were performed by AT&T.

ECF No. 20 at 5-6 (also asserting "Defendant . . . provided a 'Code of Business Conduct' to Plaintiff on various subjects[.]").

As explained in the Report, the evidence on which Horton relies does not support a finding AT&T Services acted as Horton's joint employer. This is, most critically, because the proffered

5

evidence does not support an inference *any* of the nine factors discussed in *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 414-15 (4th Cir. 2015) are satisfied as to AT&T Services.[1]

Even if one or more of the *Butler* factors (or Horton and his fellow employees' subjective beliefs) supported an inference *some* AT&T entity acted as Horton's joint employer, it would not support an inference AT&T *Services* acted in that capacity. This is because the references to "AT&T" on which Horton relies do not identify *any* specific entity much less AT&T Services. *See, e.g.*, ECF No. 17-3, Horton dep. at 23-24 (asserting "I think my appraisals were done by AT&T. My ID has AT&T. I'm assuming that I work for AT&T," after conceding AT&T Services never issued him a paycheck and BellSouth Telecommunications is identified as employer on his paychecks and W2s); *see also* ECF No. 17-3 at 19 (discrimination charge filed with South Carolina Human Affairs Commission listing employer simply as "AT&T"). Likewise, while the job posting for the position at issue identifies both the hiring company (BellSouth Telecommunications) and a broader "Business Unit" whose name includes "AT&T" ("AT&T Technology Operations"), it does not mention AT&T Services. ECF No. 17-3 at 9, 10.[2] In contrast, uncontroverted evidence

---

[1] The one item of proffered evidence that comes closest is evidence some "AT&T" entity provided a Code of Conduct applicable to Horton and his fellow employees. While not a precise fit, providing standards of conduct bears some similarity to the sixth *Butler* factor: "whether the putative employer provides the individual with formal or informal training." *Butler*, 793 F.3d at 414-15. Even if providing the Code of Conduct raises a genuine issue of material fact as to this single factor, it would not be enough to raise an inference of joint employment because the sixth factor is not one of the factors considered most significant. *See id.* at 415 (noting first three factors of power to hire and fire, extent of supervision, and where and how work takes place are most important).

[2] AT&T Services, Inc. apparently played some role in responding to Horton's formal charge of discrimination filed with the United States Equal Employment Opportunity Commission ("EEOC") as the Notice of Right to Sue letter issued by the EEOC was copied to "Ashley Strong[,] Lead Consultant-EEO[,] *AT&T Services, Inc*." *See* ECF No. 17-3 at 22 (emphasis added). While

establishes multiple entities (including three upstream members or owners of BellSouth Telecommunications) had names that included "AT&T." *See* ECF No. 17-1 ¶ 4 (Bunch declaration averring BellSouth Telecommunications' sole upstream member/owner is BellSouth LLC, whose parent company is AT&T DataComm, LLC, whose parent company is AT&T DataComm Holdings, Inc., whose parent company is AT&T Inc.); *id.* ¶ 4 (Bunch declaration averring AT&T Services is jointly owned by AT&T, Inc. and AT&T Teleholdings, Inc.).

Horton's arguments suggest a belief AT&T Services is an upstream owner of BellSouth Telecommunications. *See*, *e.g.*, ECF No. 18 at 1 (stating, in motion to amend, that Horton "maintains that AT&T Services Inc. is legally responsible and liable *for the acts of its subsidiary*" (emphasis added)). Even if upstream ownership were a factor under *Butler,* it would not support Horton's position as uncontroverted evidence establishes AT&T Services is neither an immediate nor remote upstream owner of BellSouth Telecommunications. *See generally* ECF No. 17-1 ¶¶ 3, 4 (Bunch Declaration); Report at 4 n.3 (explaining "AT&T, Inc. is the great great grandparent of BellSouth [Telecommunications] as well as the joint owner, with AT&T Teleholdings, Inc., of AT&T [Services, which] has no ownership interest in BellSouth [Telecommunications,]).

For these reasons, the court adopts the Report's rationale as to the non-viability of the joint-employer theory (as well as absence of evidence AT&T Services played any other role that would subject it to liability) and grants the motion for summary judgment on the federal claims.

---

this may be the source of Horton's decision to name AT&T Services as a Defendant, it does not support a finding this entity acted as joint employer.

### E. Prima Facie Case

The court declines to adopt the Report's alternative rationale that Horton has not proffered evidence sufficient to establish a prima facie case of discrimination. This issue was introduced for the first time through Horton's memorandum in opposition to summary judgment. *See* ECF No. 20 at 7-10. AT&T Services did not seek summary judgment on this ground in its opening memorandum. *See* ECF No. 17. Neither did AT&T Services take up the argument on reply, instead continuing its focus on AT&T Services lack of involvement in any events relevant to Horton's claim. ECF No. 21. Consistent with that focus, AT&T Services expressly declined to "address the merits of Plaintiff's failure to promote claims." *Id.* at 7 n. 2.[3] Under these circumstances, the court declines to consider the sufficiency of Horton's prima facie case as a ground for summary judgment.

## II. Motion to Amend

The Report recommends Horton's motion to amend be denied because he has not shown good cause for his delay in seeking amendment. Beyond his generic, global objection, Horton offers no argument against the recommendation his motion to amend be denied. Thus, Horton has not raised an objection requiring de novo review. Even if the court were to conduct a de novo review, it would adopt the recommendation for reasons explained below.

For purposes of this order, the court assumes without deciding that the proposed amendment would be granted pursuant to Rule 15 of the Federal Rules of Civil Procedure if sought

---

[3] In contrast to its pre-Report filings, AT&T Services argues in its response to Horton's objections that he has not made out a prima facie case of discrimination. This argument comes too late to be considered as a ground for summary judgment.

in a timely manner. Unfortunately, Horton did not seek to amend until August 6, 2019, more than four months after the deadline for motions to amend (March 26, 2019), a week after the close of discovery (July 24, 2019), and a day after Defendant moved for summary judgment (August 5, 2019). This delay is particularly significant in light of AT&T Services' multiple early filings that warned Horton he had failed to name the proper Defendant. *See* ECF No. 3 at 3 (Dec. 19, 2018 response to Local Civil Rule 26.01 Interrogatory (F)); ECF No. 4 at 1 n.1 (Dec. 26, 2019 Answer to Complaint); ECF No. 10 at 1 (Jan. 29, 2019 response to Local Civil Rule 26.03 Interrogatories); ECF No. 19-1 n.1 (Apr. 17, 2019 Answers to Interrogatories). It is also significant that AT&T Services did not simply deny responsibility in these filings. It, instead, identified BellSouth Telecommunications as Horton's employer and the entity that should have been named as Defendant. *Id.* In the first such filing, defense counsel agreed to accept service on behalf of BellSouth Telecommunications. ECF No. 3 at 3.[4]

Despite this information, Horton argues the delay was justified because "he was entitled to conduct discovery into [the identity of the employer/hiring entity]" before amending. *Id.* at 3; *see also id.* at 5 (stating he "(permissibly) sought to engage in discovery as to the identity of his employer" before amending). Horton also refers (without citation) to testimony and documents obtained through discovery that he believes support an inference AT&T Services was properly named as a Defendant. *Id.* at 3,4 (asserting his deposed "coworkers and managers all asserted they

---

[4] While Horton testified he thought of himself as an AT&T employee, he conceded in his deposition that his paychecks and W2s all identified BellSouth Telecommunications as the issuer. He also identified the job posting for the position at issue, which listed BellSouth Telecommunications as the hiring company. Thus, AT&T Services position as to the proper Defendant was consistent with information known to Horton as to the identity of his employer and the entity responsible for the promotion decision.

9

had AT&T email addresses, AT&T security badges, and held themselves out as AT&T employees" and the manager who interviewed Horton for the position wore an "AT&T work shirt" to his deposition); *id.* at 4 (noting multiple references to AT&T in a job description and inclusion of "AT&T" in email signature blocks).

In sum, the only justification Horton offers for his delay in amendment is that he needed discovery to determine the identity of the proper Defendant and discovery revealed various references to "AT&T" or entities whose names included "AT&T." While these arguments may explain why Horton did not *drop* AT&T Services as a Defendant (even after the close of discovery), it does not explain why he did not *add* BellSouth Telecommunications early in the litigation. Such a move would have entailed no risk and little cost, especially in light of AT&T Services' identification of BellSouth Telecommunications as the proper Defendant and defense counsel's agreement to accept service on behalf of that entity.

Under these circumstances, the court finds Horton has failed to show good cause for his delay in seeking to amend to add BellSouth Telecommunications as a Defendant.[5] The motion for leave to amend beyond the deadline to do so is, therefore, denied.

---

[5] In opposing amendment, AT&T Services focuses on Horton's failure to satisfy Rule 16's good-cause requirement. It relies, in particular, on its multiple, early filings and other communications identifying BellSouth Telecommunications as Horton's employer and the entity whose hiring decision was at issue. ECF No. 19 at 9, 10; *see also id.* at 13 (arguing the same factors show undue delay even under the Rule 15 standard). Even if discovery was necessary prior to amendment, AT&T Services argues documents produced in discovery no later than early May 2019 (two months before the close of discovery) demonstrated BellSouth Telecommunications was both Horton's employer and the relevant hiring entity. Horton did not file a reply to address these concerns. Neither, as noted above, does he make any specific objection to the recommendation his motion to amend be denied.

## CONCLUSION

For the reasons set forth above, AT&T Services' motion for summary judgment is granted and Horton's motion to amend is denied. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
Senior United States District Judge

Columbia, South Carolina
February 5, 2020